IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,478

In the Matter of SARAH E. JOHNSON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held November 2, 2023. Opinion filed February 16, 2024. Indefinite suspension.

*Matthew J. Vogelsberg*, Chief Deputy Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

No appearance by respondent.

PER CURIAM:  This is an attorney discipline proceeding against the respondent, Sarah E. Johnson, of Lawrence. Johnson received her license to practice law in Kansas in September 2001.

On February 17, 2023, the Office of Disciplinary Administrator filed a formal complaint against Johnson alleging violations of the Kansas Rules of Professional Conduct (KRPC). The formal complaint addressed six separate complaints which had been filed with the ODA against the respondent. She failed to file a response in three of the complaints and provided untimely responses in the remaining three complaints. On April 18, 2023, a hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The respondent failed to appear at the hearing.

On June 5, 2023, the panel issued its final hearing report concluding that the respondent violated the following rules:  KRPC 1.3 (diligence) (2023 Kan. S. Ct. R. at

1

331); KRPC 1.4 (communication) (2023 Kan. S. Ct. R. at 332); KRPC 1.16 (termination of representation) (2023 Kan. S. Ct. R. at 377); KRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal) (2023 Kan. S. Ct. R. at 394); KRPC 8.1(b) (knowingly failing to respond to a lawful demand for information) (2023 Kan. S. Ct. R. at 431); KRPC 8.4(d) (conduct prejudicial to the administration of justice) (2023 Kan. S. Ct. R. at 433); and Supreme Court Rule 210 (duty to timely respond to a request for information) (2023 Kan. S. Ct. R. at 263). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition. The relevant portions of the final hearing report are set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

"*Findings of Fact*

. . . .

"12. On September 22, 2021, the respondent was administratively suspended for nonpayment of the annual attorney registration fee. Her license has been suspended since that time.

"Case No. DA13,678

"13. In February 2016, M.D. was convicted of premeditated murder, four aggravated batteries, and criminal possession of a firearm. He was sentenced to [a] hard-25 life sentence for the murder conviction and a consecutive 257-month sentence for the remaining convictions. The Supreme Court of Kansas affirmed M.D.'s convictions on October 25, 2019.

"14. M.D. sought representation from the respondent to prepare and file a K.S.A. 60-1507 to attack his sentence in April 2020.

"15. The respondent agreed to the representation and M.D. paid her $3,050.

2

"16.    On March 22, 2021, the ODA received a complaint from M.D. alleging that the respondent claimed that she had filed a 60-1507 motion for him, but then stopped communicating with him after M.D. asked the respondent for a copy of the motion. M.D. also alleged the respondent failed to send him a copy of the discovery she obtained from his case as he requested.

"17.    The ODA opened an investigation into M.D.'s complaint numbered 13,678. On March 31, 2021, the ODA sent the respondent a letter asking her to provide a written response to the complaint within 20 days. The respondent failed to respond to the complaint within the 20[-]day period.

"18.    Attorney Bethany Roberts was assigned to investigate the matter. The investigation revealed that the respondent never filed a 60-1507 motion on behalf of M.D.

"19.    Roberts sent additional letters to the respondent on April 5, 2021, and May 19, 2021, regarding the investigation of complaint 13,678. The respondent failed to respond to either letter.

"20.    The respondent emailed an untimely response to complaint 13,678 to the ODA on July 12, 2021.

"21.    The respondent stated that she worked diligently on M.D.'s case and reviewed his entire record which took the entire summer of 2020. She said she remained in frequent contact with M.D., and they spoke once a week.

"22.    The respondent stated that the 60-1507 motion was almost finished and ready to be filed; but she never explained why she did not provide a copy to M.D.

"23.    The respondent acknowledged not providing M.D. with the copies of the discovery she obtained because she did not see it as a priority.

"24. According to the respondent, in January of 2021 she explained to M.D. that she 'could face serious liability for sending him parts of his discovery that were not properly redacted.'

"25. According to the respondent, in February of 2021 she discovered that phone calls from the prison were being marked as spam and being sent directly to her voicemail. The respondent fixed this problem and notified M.D.'s brother of the issue. The brother indicated that M.D. would call the respondent, but she never received a call.

"26. The respondent explained that her representation with M.D. ended because he failed to call her.

"27. In August of 2021, Investigator Roberts sent the respondent multiple emails and letters regarding the investigation of the complaints. The respondent failed to respond to the emails and letters.

"Case No. DA13,689

"28. The respondent was appointed to represent defendants[] H.F. Jr., J.W., and R.M., in three separate criminal appeals.

"29. In J.W. and R.M., the Supreme Court issued orders on April 12 and 14, 2021, respectively, finding that the respondent had rendered ineffective assistance [of counsel] in each case due to missing deadlines.

"30. The Supreme Court ordered the respondent be removed as counsel and remanded both cases to the district court for appointment of new counsel.

"31. In H.F. Jr., H.F. Jr. and his family attempted to contact the respondent multiple times after she was appointed as his counsel. The respondent never contacted H.F. Jr. or his family members regarding the status of his case.

"32. On April 9, 2021, the Supreme Court issued an order stating that by May 10, 2021, the respondent was to file either (1) the brief; (2) a motion requesting an

4

extension of time; or (3) a notice that the appellant wished to voluntarily dismiss his appeal. The order also stated that the respondent's failure to take action would result in the court finding respondent ineffective, removing her as counsel and remanding the case to the district court for the appointment of counsel.

"33.   On April 16, 2021, the Clerk of the Appellate Courts reported the respondent's conduct to the ODA in the three appellate cases.

"34.   The ODA docketed the matter for investigation as 13,689 and sent a letter to the respondent on April 19, 2021, asking for a response in 20 days. The respondent failed to respond within 20 days.

"35.   The respondent had taken no action in H.F. Jr. by the May 10, 2021, deadline from the Supreme Court order, so, on May 19, 2021, the Supreme Court issued an order finding the respondent rendered ineffective assistance of counsel, removed the respondent from the case, and remanded it to the district court for appointment of counsel. The respondent's inaction caused a delay of approximately ten months [in] H.F. Jr.'s case while he awaited appointment of new counsel.

"36.   Roberts was assigned to investigate the complaint. She sent the respondent letters on May 19 and May 30, 2021, asking the respondent to contact her regarding the complaint. The respondent did not respond to the letters.

"37.   On July 12, 2021, the respondent sent the ODA an untimely response to complaint 13,689 and indicated that she had been working with a therapist and KALAP to address her 'shortcomings.' She explained that her therapist suspected she had 'undiagnosed ADHD' which disrupts her ability to accurately track the passage of time.

"38.   In August 2021, Investigator Roberts sent emails and letters to the respondent asking her to contact Roberts regarding the investigation of the complaints. The respondent failed to respond to the emails and letters.

5

"39.   The Johnson County District Court convicted J.J. of three counts of misdemeanor stalking and one count of felony stalking. He was sentenced to 12 months' probation. The Court of Appeals affirmed his convictions.

"40.   According to the Kansas Adult Supervised Population Electronic Repository, J.J. was discharged from probation on January 11, 2019.

"41.   On September 24, 2019, J.J. filed a pro se 60-1507 motion collaterally attacking his convictions in Johnson County District Court. The language of K.S.A. 60-1507(a) states that only 'a prisoner in custody under sentence of a court of general jurisdiction' may apply for relief under the statute.

"42.   On February 7, 2020, the district court dismissed J.J.'s motion for lack of jurisdiction. J.J. filed a notice of appeal.

"43.   The respondent was appointed to represent J.J. on appeal. The registry of actions shows the respondent filed two motions on March 2, 2021, and March 31, 2021, respectively, to extend the deadline for filing an appellate brief. The deadline was extended to April 30, 2021.

"44.   J.J. filed a complaint with the ODA on April 16, 2021, alleging that he had not received competent counsel.

"45.   On April 19, 2021, the ODA docketed the complaint as 13,691 and sent a letter to the respondent asking her to provide a written response to J.J.'s complaint within 20 days. The respondent failed to timely respond.

"46.   The ODA assigned Roberts to investigate J.J.'s complaint. Roberts sent the respondent a letter on May 19, 2021, asking her to contact Roberts regarding the complaint. The respondent failed to respond to the letter.

6

"47.    The Court of Appeals issued an order on May 19, 2021, stating that the respondent failed to file her appellant's brief by the April 30, 2021, deadline making it overdue. It ordered the respondent to file a brief by June 9, 2021, or the appeal would be dismissed for failure to comply with the rules of the court.

"48.    J.J. filed a pro se motion to remove the respondent from his appellate case and to appoint new counsel on June 14, 2021.

"49.    On June 28, 2021, the Court of Appeals granted J.J.'s motion and remanded the case to allow for the appointment of substitute counsel. The order also directed the respondent to file a motion to withdraw by July 14, 2021. The respondent failed to file a motion to withdraw.

"50.    On July 12, 2021, the respondent provided the ODA with an untimely response to J.J.'s complaint. The respondent stated that J.J. had completed his sentence prior to filing his 60-1507 motion making relief unavailable to him under the statute. The respondent claimed that she explained this to J.J.

"51.    The respondent claimed that she 'was preparing to file a brief making a novel argument about the lack of remedy for defendants who had typical 1507 grounds for making a collateral challenge to their convictions but had such short sentences, they had no meaningful access to 1507 relief.' But she 'ceased working on his case when [she] learned he was planning to ask for a different attorney.'

"52.    Investigator Roberts sent letters and emails to the respondent asking her to contact her regarding the complaint investigation in August 2021, but the respondent failed to respond to her communications.

"Case No. DA13,806

"53.    D.S. was convicted of first-degree murder and kidnapping in November 2014. In December 2014, D.S. was sentenced to a hard-25 life sentence for the murder conviction and a consecutive 77-month sentence for the kidnapping conviction. The Supreme Court later confirmed his convictions on appeal.

7

"54. D.S. filed a pro se K.S.A. 16-1507 motion to collaterally attack his convictions (Case No. 18-CV-754) in March 2018. The motion languished until an attorney was appointed to represent D.S. in March 2020.

"55. D.S. also contacted the respondent to represent him on the 1507 motion in March 2020. The respondent agreed to represent him and sent D.S. an attorney-client retainer agreement dated March 12, 2020.

"56. The retainer agreement stated that D.S. was hiring the respondent 'to provide legal services in connection with Sedgwick County Case 18 CV 0754.' The agreement provided that the respondent would bill her services at an hourly rate of $150 and required a $2,500 advance payment before she would begin working.

"57. D.S. signed the agreement on March 17, 2020, and returned it to the respondent. D.S.'s girlfriend and sister paid the $2,500 advance to the respondent.

"58. The respondent entered her appearance in the case on April 1, 2020. The registry of actions for the case shows no further actions taken by the respondent.

"59. In December 2020, D.S.['s] girlfriend paid an additional $1,000 and D.S. paid $1,000 to the respondent to hire a toxicologist as an expert witness in his case.

"60. D.S.'s $1,000 was returned to his inmate account. D.S.'s girlfriend never got her money back. D.S. does not know whether the respondent used the money to hire a toxicologist.

"61. On January 10, 2022, the ODA received a complaint from D.S. (13,806) stating that the last communication he had with the respondent was in June 2021, and other than the respondent's entry of appearance, he did not receive any other evidence that the respondent had performed any work on his case. The respondent never refunded any money to D.S.'s sister or girlfriend.

8

"62.   The ODA sent a letter by certified mail on January 12, 2022, to the respondent's residential address asking her to provide a written response to D.S.'s complaint. The letter was returned to the ODA as unclaimed on February 9, 2022.

"63.   The ODA sent a second letter on February 15, 2022, to the respondent's office address asking her to provide a written response to D.S.'s complaint. The letter was returned to the ODA on May 2, 2022, as 'NOT DELIVERABLE AS ADDRESSED' and 'UNABLE TO FORWARD.'

"64.   Between March and April 2022, Investigator Roberts sent letters and emails to the respondent regarding D.S.'s complaint. The respondent failed to respond to the communications.

"65.   In April 2022 Disciplinary Administrator Gayle Larkin, pursuant to Supreme Court rule 217(a), issued a subpoena to Lawrence attorney Sherri E. Loveland, chair of the Douglas County Bar Association's Ethics and Grievance Committee, to take the respondent's deposition at Loveland's office on May 13, 2022. Assistant Disciplinary Administrator Katie McAfee personally served the respondent with the subpoena at her residence on April 28, 2022.

"66.   On May 12, 2022, the day before the scheduled deposition, the respondent called Disciplinary Administrator Gayle Larkin and asked her to release the respondent from the subpoena. The respondent discussed the personal difficulties she was having such as an inability to properly track the passage of time and a struggle with staying awake. Larkin spoke with her in detail about options available to her, such as taking disabled status, but informed her that the nature of the discussion would not release her from the subpoena.

"67.   The respondent failed to appear for the deposition the following day.

"Case No. DA13,810

"68.   In August 2014, E.A. was convicted of three counts of identity theft. He received a suspended sentence of 22 months['] imprisonment and was placed on

9

supervised probation for 18 months. The Court of Appeals later affirmed his convictions. Based on the registry of actions for E.A., his probation was terminated in 2016.

"69.    E.A. later contacted the respondent about seeking clemency from the governor regarding his identity theft convictions. According to E.A., the respondent agreed to file a clemency application on his behalf and quoted him a fee of $1,500.

"70.    E.A. provided the respondent with a $1,500 check on August 15, 2020. The check was cashed on September 10, 2020.

"71.    In December 2020, the respondent met with E.A. at his home and discussed what she could do for him regarding the clemency petition.

"72.    E.A. last heard from the respondent in May 2021. E.A. sent multiple texts and made phone calls. The respondent never answered them.

"73.    In July 2021, E.A. traveled to the respondent's office to try and speak with her, but she was not there. While at the office building, E.A. spoke to a person who said that the respondent had not been to her office since December 2020.

"74.    The ODA received a complaint (13,810) from E.A. on January 6, 2022, regarding the respondent.

"75.    The ODA sent a letter by certified mail on January 11, 2022, to the respondent's residential address, asking her to provide a response to E.A.'s complaint. The ODA received the certified mailing receipt on January 18, showing that the letter was delivered on January 13. The respondent failed to respond to the letter.

"76.    The ODA sent a second letter by certified mail the respondent's office address, asking her to respond to E.A[.]'s complaint. The letter was returned to the ODA as 'NOT DELIVERABLE AS ADDRESSED' and 'UNABLE TO FORWARD.'

10

"77. Between March and April 2022, Investigator Roberts sent letters and emails to the respondent and attempted to call her regarding E.A.'s complaint. The respondent failed to respond to the communications.

"Case No. DA13,856

"78. K.S. retained the respondent to file a motion to withdraw his pleas in early 2020. On April 1, 2020, the respondent entered her appearance in K.S.'s criminal case.

"79. K.S. made payments to the respondent totaling $1,775.

"80. The respondent filed a motion on K.S.'s behalf seeking to withdraw his plea.

"81. The respondent took no further action to get the motion set for a hearing.

"82. K.S. was never refunded the money he paid the respondent for his representation.

"83. K.S. filed a complaint with the ODA regarding the respondent. K.S. reported receiving infrequent communications from the respondent and indicated that he was unable to reach her. He stated that the last time he had heard from the respondent was May 2021 during a phone call.

"84. The ODA docketed the matter for investigation as 13,856 and sent a letter to the respondent's business address on June 21, 2022, asking her to provide a written response to K.S.'s complaint. The respondent failed to respond to the letter.

"85. On July 12, 2022, the ODA sent letters by certified mail to the respondent's business and residential address, asking the respondent to provide a response to K.S.'s complaint. The letter sent to the business address was returned to the ODA on July 26, 2022, as 'NOT DELIVERABLE AS ADDRESSED' and 'UNABLE TO FORWARD.' The letter sent to the residential address was returned to the ODA on August 2, 2022, as 'UNCLAIMED' and 'UNABLE TO FORWARD.'

11

"Service

"86.   The respondent failed to appear at the hearing on the formal complaint. It is appropriate to proceed to hearing when a respondent fails to appear only if proper service was obtained. Kansas Supreme Court Rule 215 governs service of process in disciplinary proceedings and requires the disciplinary administrator to serve the respondent with a copy of the formal complaint and notice of hearing no later than 45 days before the hearing on the formal complaint by either personal service, certified mail to the respondent's most recent registration address with the Office of Judicial Administration, or on the respondent's counsel by personal service, first-class mail, or email. 2023 Kan. S. Ct. R. at 268.

"87.   In this case, the disciplinary administrator complied with Rule 215 by sending a copy of the formal complaint and the notice of hearing and prehearing conference, *via* certified United States mail, postage prepaid, and regular mail to both the respondent's business address and residential address that the respondent registered with the Office of Judicial Administration more than 45 days in advance of the hearing on the formal complaint. The ODA also sent a copy of the formal complaint and notice of hearing and prehearing conference via email to the respondent's registered business email address and a personal email address.

"88.   Additionally, the ODA also made multiple attempts to personally serve the respondent at her residential address. The hearing panel concludes that the respondent was afforded the notice that the Kansas Rules require and more.

"89.   Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3 (diligence); KRPC 1.4 (communication); KRPC 1.16 (termination of representation); KRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal); KRPC 8.1(b) (knowingly failing to respond to a

12

lawful demand for information); KRPC 8.4(d) (conduct prejudicial to the administration of justice); and Supreme Court Rule 210 (duty to timely respond to a request for information), as detailed below.

"KRPC 1.3

"90.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent her clients. In 13,689, the respondent failed to meet deadlines established by court orders resulting in the court ordering her removal and finding ineffective assistance of counsel. In 13,806, the respondent failed to hire an expert witness for D.S. and failed to take any action to represent him in his 60-1507 motion. In 13,810, the respondent failed to perform any work on E.A.'s clemency petition. In 13,856, the respondent filed a motion to withdraw K.S.'s pleas but failed to take any further action on the case. In all cases, the respondent failed to respond to clients diligently and promptly. Because the respondent failed to act with reasonable diligence and promptness in representing her clients, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"91.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' KRPC 1.4(a). In these cases, the respondent violated KRPC 1.4(a) when she failed to respond to multiple requests from her clients for information regarding the status of their representation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.16

"92.   In certain circumstances, attorneys must withdraw from representing a client. KRPC 1.16 provides:

13

'(a)    Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

[…]

(2)    the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client[.]'

KRPC 1.16. The respondent was required to withdraw from the representation of her clients when her physical health or mental condition impaired her ability to adequately represent them. *See* KRPC 1.16(a)(2). The respondent first indicated her personal difficulties were interfering with the representation of her clients in an untimely email response to complaint 13,689 sent to the ODA on July 12, 2021. The email explained that she is suspected to be suffering from undiagnosed ADHD and has difficulties keeping track of time and meeting deadlines because of this. The respondent took no further action to represent her clients in that matter. The respondent mentioned her mental conditions again when she sought to be excused from a subpoena obligation for another complaint investigation against her. The respondent left a voicemail with Sherri Loveland the evening before she was supposed to give sworn testimony. The respondent explained that she was working with KALAP and was considering taking disabled status as a reason for why she was unable to go to the sworn testimony. The respondent also called the ODA on May 12, 2022, again explaining her mental impairments and how it impacts her ability to experience time and seeking to be excused from the subpoena obligation. Accordingly, the respondent was aware of her mental condition and that the condition impaired her ability to represent her clients. The respondent therefore had a duty to withdraw from representation of her clients under these circumstances. Because the respondent was required to withdraw from the representation of her clients, the hearing panel finds that the respondent violated KRPC 1.16(a)(2).

"93.    KRPC 1.16 also requires the attorney to withdraw from representation when she is discharged. See KRPC 1.16(a)(3). Clearly, in 13,691, J.J. did not want the respondent to continue to represent him after he filed a pro se motion to remove her as counsel and request he be appointed new counsel. After the court granted J.J.'s motion, the respondent should have filed a motion to withdraw from the representation. The

14

respondent failed to do so. The respondent's failure to file a motion to withdraw from the representation delayed J.J.'s case. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.16(a)(3).

## "KRPC 3.4(c)

"94.   Lawyers must comply with court orders. Specifically, KRPC 3.4(c) provides: '[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.' In 13,689, the respondent knowingly failed to meet deadlines as directed by the court resulting in findings of ineffective assistance of counsel. In 13,691, the respondent was ordered to file a motion to withdraw from representation but failed to do so, contrary to the court's order. In the investigation of 13,806, the respondent was personally served with a subpoena requiring her to submit a sworn statement on May 13, 2022, but the respondent failed to appear. Because the respondent violated the courts' orders her client's cases suffered, and the investigation of 13,806 was hindered. Accordingly, the hearing panel concludes that the respondent violated KRPC 3.4(c).

## "KRPC 8.1(b)

"95.   Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) provides that 'a lawyer . . . in connection with a disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority.' KRPC 8.1(b). During the disciplinary investigations of the six complaints against the respondent, the respondent knowingly failed to respond to Investigator Roberts['] requests for information regarding each complaint against her. The respondent only sent the ODA an untimely email response to complaints 13, 678, 13,689, and 13,691, but failed to respond to any further requests for information from the investigator or the ODA. Furthermore, the respondent knowingly did not appear at the deposition regarding complaint investigation 13,806 after being personally served. Because the respondent knowingly failed to respond to lawful requests for information during the disciplinary investigations, the hearing panel concludes that the respondent failed to fully cooperate in the investigation in violation of KRPC 8.1(b).

15

"KRPC 8.4(d)

"96.  'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice in 13,689 when she was appointed to represent J.W., R.M., and H.F. Jr. The respondent prejudiced the administration of justice in J.W.'s case when she failed to timely docket the appeal and respond to the court's order resulting in a finding of ineffective assistance of counsel. The respondent engaged in conduct prejudicial to the administration of justice in R.M.['s] and H.F. Jr.'s cases when she failed to timely file a brief, extension of time, or a voluntary dismissal in response to . . . court orders constituting ineffective assistance of counsel. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"Rule 210(b)

"97.  Lawyers must cooperate in disciplinary investigations. Rule 210(b) provides the requirement in this regard. 'An attorney must timely respond to a request from the disciplinary administrator for information during an investigation and prosecution of an initial complaint or a report, a docketed complaint, and a formal complaint.' Rule 210(b). The respondent knew that she was required to forward a written response to the six initial complaints[;] she had been repeatedly instructed to do so in writing by the disciplinary administrator and Investigator Roberts. The respondent knowingly failed to provide a timely response to complaint 13,678, 13,689, and 13,691. The respondent knowingly failed to provide any response to the other initial complaints against her (13,806, 13,810, and 13,856). Accordingly, the hearing panel concludes that the respondent violated Rule 210(b).

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"98.  In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

16

"99. *Duty Violated.* The respondent violated her duty to her clients, the legal system, and the legal profession.

"100. *Mental State.* The respondent knowingly violated her duty.

"101. *Injury.* As a result of the respondent's misconduct, the respondent caused actual injury to her clients and the legal profession. Her actions caused delay in her clients' cases and the respondent failed to complete the work her clients paid to do.

"Aggravating and Mitigating Factors

"102. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"103. *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct. The respondent repeatedly failed to comply with court orders, failed to communicate with clients, and failed to cooperate with the disciplinary investigation.

"104. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated, KRPC 1.3 (diligence), KRPC 1.4 (communication), [KRPC] 1.16 (termination of representation), KRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal), KRPC 8.1(b) (knowingly failing to respond to a lawful demand for information), KRPC 8.4(d) (conduct prejudicial to the administration of justice), and Kan. Sup. Ct. R. 210 (duty to timely respond to a request for information). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"105. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The respondent failed to provide timely written responses to the complaints in this case. The respondent was repeatedly instructed to provide written responses. The respondent failed to

17

otherwise cooperate with the complaint investigations. Specifically, the respondent failed to comply with her subpoena obligation during the investigation in which she was properly served. The respondent's actions amount to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

"106. *Vulnerability of Victim*. The respondent's clients were incarcerated individuals who were particularly vulnerable to the respondent's misconduct.

"107. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 2001. At the time of the misconduct, the respondent has been practicing law for more than 20 years.

"108. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"109. *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined in her 20 years of practice.

"110. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from some sort of emotional or personal problems as indicated in her response to complaint 13,689. The respondent also alluded to mental health issues and her work with KALAP in her phone call with the ODA. The respondent's personal or emotional problems contributed to her misconduct.

"111. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.41 Disbarment is generally appropriate when:

(a)  a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b)  a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c)  a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.'

'4.42  Suspension is generally appropriate when:

(a)  a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)  a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

'6.21  Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.'

'6.22  Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.'

'7.1  Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.'

'7.2   Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation of the Parties*

"112.   The disciplinary administrator recommended that the respondent be suspended for 30 months and be required to undergo a reinstatement hearing.

"*Recommendation of the Hearing Panel*

"113.   Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be indefinitely suspended. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Supreme Court Rule 232.

"114.   Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, the court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2023 Kan. S. Ct. R. at 281). Clear and convincing evidence is evidence that causes the fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

A finding is considered admitted if exception is not taken. When exception is taken, the finding is typically not deemed admitted so the court must determine whether it

20

is supported by clear and convincing evidence. *In re Hodge*, 307 Kan. 170, 209-10, 407 P.3d 613 (2107). If so, the finding will not be disturbed. The court does not reweigh conflicting evidence, assess witness credibility, or redetermine questions of fact when undertaking its factual analysis. *In re Hawver*, 300 Kan. 1023, 1038, 339 P.3d 573 (2014).

Respondent was given adequate notice of the formal complaint, to which she did not file an answer. Respondent was also given adequate notice that the formal complaint was set for hearing before the disciplinary panel. Respondent also failed to appear before the panel.

After the hearing panel issued its report, we ordered oral arguments in this matter under Rule 232(g)(4)(D) (2023 Kan. S. Ct. R. at 296). The matter was set for the November 2, 2023 docket. Several attempts were made by the Clerk of the Appellate Courts to contact the respondent to notify her that her disciplinary case was set for oral argument. The Clerk filed an affidavit setting forth his attempts in contacting the respondent to provide notice of the hearing. Attempts to reach the respondent at her business and residence were sent by phone, email, regular mail, and certified mail, all of which went unanswered. See Rule 206(n) (2023 Kan. S. Ct. R. at 260) (requiring attorneys register contact information including residential and business addresses). The affidavit states that the 2023 November Docket was mailed by regular mail and certified mail to respondent's business and residential addresses. The docket mailed to her business address was returned as "no forwarding address." The certified mail addressed to her residence was returned "as unclaimed and unable to forward" but the docket mailed to her residence by regular mail was not returned. The Clerk sent an appearance letter by regular and certified mail to the respondent. The certified letter was returned to the Clerk "as unclaimed and unable to forward." The letter sent by regular mail was not returned.

21

No exceptions were filed in the case, and therefore, the findings of fact and conclusions of law in the hearing panel's final report are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2023 Kan. S. Ct. R. at 288). The evidence before the panel clearly and convincingly established that the charged misconduct violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.16 (termination of representation), KRPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal), KRPC 8.1(b) (knowingly failing to respond to a lawful demand for information), KRPC 8.4(d) (conduct prejudicial to the administration of justice), and Supreme Court Rule 210.

The only issue left for us to resolve is the appropriate discipline. There are both aggravating and mitigating factors present that affect the degree of discipline warranted. The aggravating factors present include: that respondent has established a pattern of misconduct, she has committed multiple unique offenses, she demonstrated bad faith by intentionally failing to comply with the rules of the disciplinary process, the victims of her actions were particularly vulnerable, and she has substantial experience in the practice of law. The mitigating factors include: the respondent has no prior disciplinary record and she has been suffering from mental health, emotional, and personal problems.

At oral argument, the Disciplinary Administrator's office recommended that we adopt the hearing panel's recommendation to indefinitely suspend respondent's license to practice law and that respondent be subject to a reinstatement hearing under Supreme Court Rule 232 (2023 Kan. S. Ct. R. at 293). The court agrees with the panel's recommendation.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Sarah E. Johnson is indefinitely suspended from the practice of law in the state of Kansas, effective the date of this opinion, in accordance

with Supreme Court Rule 225(a)(2) (2023 Kan. S. Ct. R. at 281) for violating KRPC 1.3, 1.4, 1.16, 3.4(c), 8.1(b), 8.4(d), and Supreme Court Rule 210.

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2023 Kan. S. Ct. R. at 292) (notice to clients, opposing counsel, and courts following suspension or disbarment).

IT IS FURTHER ORDERED that if respondent applies for reinstatement, she shall comply with Supreme Court Rule 232 (2023 Kan. S. Ct. R. at 293) and be required to undergo a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.